UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MICHAEL ADAMS,**

       **Plaintiff,**

v.                                    Case No. 8:10-cv-2535-T-23TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

       **Defendant.**
                                /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-seven years old at the time of his administrative hearing in March 2010. He stands 5 feet 10 inches tall and weighed 228 pounds according to his administrative filings. Plaintiff has an eleventh grade education. His past relevant work was as an automobile mechanic and a construction worker. Plaintiff applied for disability benefits and Supplemental Security Income (SSI) payments in May 2008, alleging disability as of January

1, 2002, by reason of low back, neck, and shoulder injuries. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (ALJ). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified he is unable to work due to herniations in his neck and back, numbness in his left arm and leg, frequent headaches, and poor eyesight. He had his eyes checked two years ago and was told he needs glasses, but he has not gotten them yet. Plaintiff can lift ten to fifteen pounds. He can stand for thirty minutes and sit for fifteen to thirty minutes before needing to change positions.

Upon questioning by his counsel, Plaintiff described his back pain as if someone were sticking a knife in his back and moving it around. Two to three times a week the pain is so severe that it will bring him to tears. Laying down helps to take the pressure off of his back and neck. Plaintiff explained how sometimes his back will go out and he will be bedridden anywhere from three days to a week and a half. His girlfriend helps get him in and out of bed or to shower when his back goes out. She also supports him financially. Plaintiff takes pain medications that make him drowsy. He rests as often as he can, usually a couple of hours a day. If he had a job that allowed him to alternate sitting and standing but not walking around or lying down, he estimated he could do that for about an hour. (R. 27-34).

Joyce Cartwright, a vocational expert (VE), testified upon a hypothetical assuming an individual who could lift fifteen pounds with a sit/stand option at will; who could stoop

2

occasionally, but could not squat, kneel, crawl, or reach above the shoulders; and who could climb stairs occasionally, but could not climb ropes, ladders, or scaffolds. Based upon that hypothetical, the VE opined that the individual could not perform Plaintiff's past relevant work, but could perform other jobs available in the local and national economy including cashier II, small products assembly, and product inspection. The first two positions are light exertional work with an SVP of 2, and the product inspection position, such as a lens gauger, is sedentary exertional work with an SVP of 2. (R. 34-36).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are discussed herein as necessary. Pertinent to this appeal, Plaintiff's date last insured was March 31, 2007.

By his decision of April 1, 2010, the ALJ determined that while Plaintiff has severe impairments related to herniated nucleus pulposus in the neck and back, hypertension, and headaches, he nonetheless had the residual functional capacity to perform a limited range of light[1] exertional work with a sit/stand option. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 9-19). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

---

[1]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

Plaintiff argues that the ALJ failed to give controlling weight to the March 2010 opinion of his treating neurologist, Jairo Libreros, M.D., that his ability to function was severely limited and he could work only one hour a day. According to Plaintiff, had that opinion been given controlling weight, substantial gainful activity would have been precluded and he would have been found disabled. Given his ongoing, five-year treatment history with Dr. Libreros, the results of his physical exams, and his continuous complaints, Plaintiff urges that the record supports and is consistent with the limitations assessed by Dr. Libreros and are not internally inconsistent as urged by the Commissioner. Plaintiff also contends that the

5

reasons the ALJ provided for discounting Dr. Libreros's opinion fail to demonstrate adequate good cause in that they are not supported by substantial evidence. In particular, Plaintiff notes that: (1) while the limitations the doctor identified in March 2010 are not found in his treatment notes, the findings in the treatment notes are consistent therewith; (2) the ALJ's finding that the Plaintiff could ambulate effectively is not accurate because the medical records reflect that he had either an antalgic gait or limp, and although he did not use a cane, he had ongoing problems with his gait; (3) the ALJ's statement that Plaintiff lacked specialized treatment after 2004 or 2005 is not significantly relevant because it is not clear why Plaintiff did not have surgery and the ALJ should not have assumed other treatment options were available that Plaintiff should have pursued; and (4) the ALJ improperly relied on the opinion of the consulting doctor, Fathy Saad, M.D., who saw Plaintiff only once and the sole inconsistency between his opinion and Dr. Libreros's March 2010 opinion is his notation that Plaintiff reported it hurts to lift over twenty-five pounds. Lastly, Plaintiff summarily contends that the electrical studies confirm his lumbar and cervical disc herniations which evidences an underlying medical condition that can reasonably be expected to give rise to his claimed pain. (Doc. 19).

In response, the Commissioner contends that the ALJ properly considered Dr. Libreros's opinions but found his disabling limitations to be inconsistent with his own treatment records. The Commissioner asserts that the treatment notes reflect fairly consistent restrictions throughout to include lifting and carrying ten pounds, performing no repetitive and/or heavy exertion, avoiding extreme exercises and frequent flexion of the cervical and

lumbar spine. However, the restrictions do not limit Plaintiff's ability to ambulate or require any assistive device, the treatment was conservative, his medications basically stayed the same, the doctor did not refer Plaintiff for more aggressive treatment after the initial year or two of treatment, although the doctor completed an application for a temporary disabled parking permit his treatment records did not contain any walking restrictions until 2010, and the March 2010 opinion was obtained upon request of Plaintiff or his attorney. According to the Commissioner, Dr. Libreros reported no change in Plaintiff's condition to support the increased severe limitations imposed by the doctor's March 2010 medical statement. The Commissioner urges that the ALJ's discounting of Dr. Libreros's March 2010 statement is further supported by the other medical evidence including the records of Jeffrey Tedder, M.D.; Lorraine Thorpe, D.C.; Matthew Cusumano, D.O.; and Dr. Saad, none of whom placed any disabling restrictions on Plaintiff. Additionally, the Commissioner notes that Plaintiff's insured status expired March 31, 2007, and as pointed out by the ALJ, Dr. Libreros's opinion of March 2010 is dated well after the Plaintiff's insured status expired. Finally, the Commissioner urges that the ALJ properly considered Plaintiff's complaints of pain and other symptoms when assessing Plaintiff's functional capacity. (Doc. 20).

      Plaintiff began treating with Dr. Libreros for neck and back pain in March 2005.[2] At that time, the neurologist advised Plaintiff to lift or carry no more than ten pounds, not to perform repetitive or heavy exertion with the upper extremities or to maintain the same position on the neck or spine, to avoid extreme exercises and frequent flexion or extension of

---

[2]Dr. Libreros's records can be found at 7F, 9F, 12F, 14F, 15F, 16,F, 17F, 18F, 19F, 20F(duplicate).

7

the cervical or lumbar spine, and to follow-up with his chiropractor. (R. 672-73). He assessed cervical spine sprain/strain with cervical radiculopathy secondary to left paracentral disc extrusion at C5-6 and C6-7 levels confirmed by electrodiagnostic studies and MRI studies, post-traumatic headaches, lumbar spine sprain/strain with lumbar radiculopathy secondary to right paracentral disc protrusion (herniation) at L4-5 and bulging disc at L3-4 with annular tear and narrowing of the neural foramina at the L3-4 and L4-5 levels, left shoulder sprain/strain, bilateral sacroilitis, and right carpal entrapment neuropathy. (R. 672). A muscle relaxer and an anti-inflammatory were prescribed. *Id.* In June 2005, Dr. Libreros reported that Plaintiff had reached maximum medical improvement with an impairment rating of fourteen percent of the whole body. (R. 658-59). A pain medication was added (Lortab), and the doctor opined that Plaintiff most likely would require surgical decompression. (R. 659). Treatment was infrequent in 2006 and 2007, but picked up from 2008 to 2010.

In March 2008, Dr. Libreros completed for Plaintiff an application for a disabled person parking permit wherein he indicated that Plaintiff was temporarily disabled from June 2008 to June 2009 due to a severe limitation in his ability to walk due to an arthritic, neurological, or orthopedic condition. (R. 762). The doctor completed another such application for Plaintiff in February 2009, wherein he certified that Plaintiff was permanently disabled due to the same condition. (R. 732). During this period, i.e., 2008 to 2010, Plaintiff treated with Dr. Libreros regularly on a monthly basis. The treatment notes, which are primarily checklist type forms, reveal that Plaintiff's condition remained essentially the same, with periodic flare-ups. Medication was continued, and Dr. Libreros often indicated that

Plaintiff should avoid lifting more than ten pounds, overhead reaching, and frequent flexion and extension of the spine. *See, e.g.* (R. 459, 503, 528, 540, 550, 560, 723, 727, 731, 736, 760, 767, 771).

In March 2010, Dr. Libreros completed medical statement forms regarding low back pain and cervical spine disorders. (R. 785-86, 788-89). On these forms, the doctor opined that Plaintiff suffered from extreme pain, could stand for fifteen minutes and sit for fifteen minutes, work only one hour a day, frequently and occasionally lift five to ten pounds, occasionally bend and stoop, and move his neck only to a limited extent. (R. 785, 788). In support of these limitations, the doctor indicated that examination or testing revealed limitation of motion of the spine, motor loss, sensory or reflex loss, positive straight leg raising test, severe burning or painful dysesthesia, the need to change position more than once every two hours, lumbar spinal stenosis, and an inability to ambulate effectively. *Id.* He also commented that Plaintiff had lumbar radiculopathy secondary to right paracentral disc protrusion at L4-5, disc bulging at L3-L4 with annular tear and narrowing of the neuroforaminal, bilateral sacrolitis, cervical radiculopathy secondary to left paracentral disc extrusion at C5-6 and C6-7, and posttraumatic headaches. (785-86, 788).

The ALJ credited the impairments identified by Dr. Libreros, finding that Plaintiff's herniated nucleus pulposus in the neck and back were severe impairments. (R. 11). The ALJ fully recounted the treatment notes spanning 2005 to 2010. (R. 12-17). Regarding the doctor's opinion on Plaintiff's functional capacity, the ALJ noted:

> Dr. Libreros limited the claimant to lifting of ten pounds in
> 2005 and never made a change in these limitations although

9

claimant progressed to taking over-the-counter Motrin for pain.[3] This doctor did increase claimant's limitations in the most recent cervical and lumbar questionnaire (March 3, 2010), although these limitations are not consistent with his treatment records and are well after the expiration of claimant's date last insured.

***

By January 7, 2010, this physician limited claimant to lifting of [no]more than ten pounds and he was told to observe his body mechanics. The undersigned is cognizant that on March 6, 2008, Dr. Libreros completed a form requesting a temporarily disabled parking permit for claimant due to a severe limitation in a person's ability to walk, but progress notes from this physician do not show any limitations placed on claimant for walking.

(R. 12, 15). After recounting the limitations reported in the forms completed by Dr. Libreros in March 2010, the ALJ stated:

> These limitations have been considered, but the undersigned notes that such limitations are not found in the treatment notes from this doctor. Review of the medical record as a whole shows that claimant has been able to ambulate effectively since the alleged onset date and has not required the use of any assistive device. It is also noted that claimant has not been referred for more aggressive treatment with any specialist since the earlier visits to Drs. Tedder and Cusumano. Accordingly, great weight has been given to the opinion of Dr. Libreros for his long term conservative treatment of claimant with medication.

---

[3]This appears incorrect. The records reflect that Plaintiff was prescribed Motrin.

10

(R. 15-16). The ALJ also gave "significant weight" to the findings set forth in the consultative report of Dr. Saad,[4] and "great weight" to the residual functional capacity form completed by the state agency doctor on reconsideration.[5] In doing so, the ALJ noted:

> Dr. Libreros limited claimant to lifting and carrying of ten pounds which would be in keeping with the frequent limitation for lifting and carrying on a daily basis. Furthermore, the claimant testified that he could lift and carry ten to fifteen pounds and told Dr. Saad that he only had increased pain if he lifted twenty five pounds.

(R. 17). After considering the above and Plaintiff's testimony, the ALJ determined that Plaintiff had the residual functional capacity to perform a limited range of light work with a sit/stand option [at will], lift and carry fifteen pounds, and occasionally stoop and climb stairs, but could not climb ropes, ladders, or scaffolds; reach above shoulder level; squat; kneel; or crawl. (R. 12). The ALJ posed these limitations to the VE. (R. 35). In response thereto, the VE opined that an individual with such limitations could not perform Plaintiff's past work but

---

[4]Dr. Saad examined Plaintiff in July 2008 upon request of the Division of Disability Determination. The doctor reported that Plaintiff had a slow, step-wise gait; declined to walk on heels and toes; could squat half full; had a normal stance and did not use an assistive device; needed no help changing for exam or getting on or off the exam table; could rise from chair without difficulty; had full flexion and extension in his cervical spine and full rotary movement bilaterally; declined lumbar spine movements and straight leg raising; had full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles; had 5/5 strength in his upper and lower extremities; had no evident subluxations, contractures, ankylosis, or thickening; had stable, non-tender joints with no redness, heat, swelling or effusion; had no evident motor or sensory deficits or muscle atrophy; and had 5/5 grip strength bilaterally. (R. 510-12). With respect to Plaintiff's functional capacity, Dr. Saad opined that "[i]t is difficult to evaluate due to [his] noncompliance with evaluation." (R. 512).

[5]This doctor opined that Plaintiff could perform light work with frequent postural limitations but could not climb ladders, ropes or scaffolds. He also assessed certain environmental limitations due to medication. (R. 712-19).

11

could perform work as a cashier (light exertional work), small products assembl[er] (light exertional work), and lens gauger (sedentary exertional work). (R. 35). .

As indicated above, on this appeal Plaintiff's sole challenge is to the weight the ALJ afforded to the March 2010 opinions of Dr. Libreros.[6] By his argument, the ALJ erred by not fully crediting the doctor's opinions and the reasons he provided in support of discounting the opinions fail to establish the good cause required to do so. I disagree.

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[7] *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

As an initial matter, I note, as did the ALJ, that Dr. Libreros's March 2010 opinions were rendered three years after Plaintiff's insured status expired, and the neurologist did not

---

[6]Of note, Plaintiff does not raise a separate challenge to the ALJ's residual functional capacity determination or the hypothetical question posed to the VE. And, while Plaintiff cites to this circuit's pain standard and summarily states that his confirmed cervical and lumbar disc herniations are evidence of underlying medical conditions that can reasonable be expected to give rise to his claimed pain (Doc. 19 at 11), he does not offer any argument on the subject or claim that the ALJ erred in this regard.

[7]Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440.

opine that the limitations he identified existed prior to March 2010.[8]  Consequently, the ALJ's determination with respect to Plaintiff's claim for disability benefits is not challenged.  To the extent Plaintiff's claim survives with respect to his entitlement to SSI payments, it fails.

Upon thorough consideration of the record in its entirety and the arguments presented, I conclude that the ALJ stated adequate good cause to discount the opinions rendered by Dr. Libreros in March 2010 to the extent the opinions were inconsistent with his determination of Plaintiff's functional capacity.  Plaintiff does not dispute that the limitations set forth in the forms completed by the doctor in March 2010 are not documented in any of the doctor's treatment notes.[9]  Notably, in the most recent treatment note of record, i.e. in January 2010, Dr. Libreros recommended only that Plaintiff should observe body mechanics and avoid lifting more than ten pounds.[10]  (R. 767).  Thus, to the extent the ALJ discounted the March 2010 statements of Dr. Libreros as inconsistent with his own treatment records, I must conclude that the ALJ's stated reason is supported by the record.  Notably absent from the

---

[8]Nor does Plaintiff claim that the limitations predate March 2010.

[9]It appears the main inconsistency is the doctor's opinion that Plaintiff could work for only one hour a day.  This is also the inconsistency on which Plaintiff primarily relies.  While Dr. Libreros often indicated that Plaintiff should avoid lifting more than ten pounds, the one hour work limitation and other restrictions identified in March 2010 are not found in the doctor's records.

[10]Although Plaintiff does not challenge with specificity the ALJ's finding that Plaintiff could lift and carry fifteen pounds (as opposed to only ten pounds), I note that it appears the ALJ credited Plaintiff's testimony that he could lift ten to fifteen pounds.  *See* (R. 30).  To the extent Plaintiff attempts to differentiate a doctor's restrictions and a claimant's ability, under the circumstances that exist here it is difference without distinction.  One of the jobs identified by the VE was classified as sedentary exertional work, which, by definition, does not require lifting or carrying more than ten pounds.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

13

doctor's treatment records is any opinion that Plaintiff could function at a level of substantial gainful activity for only one hour per day. Further, the opinion that a claimant could work only one hour a day, i.e., is disabled, is an opinion reserved to the Commissioner and a treating doctor's opinion on the same is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling 96-5p, 1996 W.L. 374183, *1-2 (S.S.A.). And, the ALJ's residual functional capacity determination is not otherwise inconsistent with Dr. Libreros's March 2010 opinion that Plaintiff could stand or sit for only fifteen minutes at a time given the option to sit or stand (at will), and the ALJ credited the limitation for occasional stooping and the doctor's earlier recommendation that Plaintiff should avoid overhead reaching. While Plaintiff suggests the doctor's March 2010 statements are consistent with the treatment notes as a whole, he does not explain how they are consistent. In sum, to the extent the ALJ discounted portions of the doctor's March 2010 statements, the ALJ provided adequate cause for doing so and his stated reason is supported by the record.

  Further, while Plaintiff takes issue with the ALJ's statement that Plaintiff has been able to ambulate effectively throughout the period at issue, I do not find the statement inaccurate. An antalgic gain and/or a limp is not inconsistent with the ability to ambulate effectively. And, it appears that the ALJ noted as much to point out the inconsistency with the doctor's opinion in support of a disabled person's parking permit and not the March 2010 opinions. In any event, although the record reveals that Plaintiff had an antalgic gait and/or limp at times, it was also reported that he could walk up to fifty feet with no or minimal pain and did not use an assistive device. *See, e.g.* (R. 296, 305). Nor can I find fault with the

ALJ's statement that Plaintiff lacked specialized treatment after 2004 or 2005. The ALJ was correct in noting that Plaintiff's cervical and lumbar conditions were treated conservatively, particularly from 2005 forward when his treatment consisted solely of medication management from Dr. Libreros. Plaintiff aptly points out that it is not clear why he did not have surgery, but I disagree that it was not fair game for the ALJ to comment on the same. *Cf. Ogranaja v. Comm'r of Soc. Sec.*, No. 05-12916, 2006 WL 1526062, at *3 (11th Cir. June 5, 2006) (upholding refusal to undergo recommended surgery as one reason supporting ALJ's credibility determination); *Craig v. Astrue* No. 8:07-cv-804-T-TGW, 2008 WL 4145970, at *4-5 (M.D. Fla. Sep. 8, 2008) (same); *but see* 20 C.F.R. §§ 404.1530(c)(3), 416.930(c)(3) (accepting reason for not following surgery recommendation where surgery was previously performed with unsuccessful results and same surgery recommended). Here, the record reveals that Plaintiff was a candidate for cervical surgery as of January 2005 and lumbar surgery was a possibility as well. (R. 287). Finally, I find that the ALJ did not err in relying on the consulting doctor's opinion. That this doctor could not proffer an opinion on Plaintiff's functional capacity can only be attributed to Plaintiff. As noted by the ALJ, Dr. Saad performed a thorough examination and testing revealed few physical deficits. And, to the extent Plaintiff suggests the sole inconsistency between the opinions of Dr. Saad and Dr. Libreros is a lifting limitation, Plaintiff is incorrect. Contrary to Plaintiff's urging, given that Dr. Saad's physical examination revealed essentially normal findings (aside from lumbar testing which Plaintiff would not perform), his report clearly is inconsistent with Dr. Libreros's March 2010 statements which essentially render Plaintiff disabled.

In sum, Plaintiff is not entitled to relief on this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

> Respectfully submitted this
> 13th day of December 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record